UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


TOM BARKER,

                    Plaintiff,

vs.                                Case No.  2:09-cv-795-FtM-36SPC

DAVID  WILKINS,[1]  Secretary  DCF;
LIBERTY   BEHAVIORAL   HEALTHCARE
CORP.;   GEO  GROUP,  INC.;  JORGE
SANTANA;  PAUL  PYE;  A.  SIMMONS;
ARCADIA POSTMISTRESS,

                    Defendants.

_____


**<u>ORDER</u>**

     This matter comes before the Court upon the following motions:

(1) Defendant Liberty's Motion to Dismiss Plaintiff's Complaint

(Doc. #27, Liberty Motion); (2) The United States Postal Service's

Motion to Dismiss (Doc. #39, USPS Motion); and Defendants, GEO

Group Inc., George Santana, Paul Pye, and Ms. A. Simmons' Motion to

Dismiss (Doc. #41, GEO Motion).  Plaintiff filed responses in

opposition to the Liberty Motion (Doc. #35); the USPS Motion (Doc.

_____

     [1]Pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, David Wilkins, the current Secretary of the Florida
Department of Children and Families, is substituted as the proper
named Defendant for George Sheldon, the former Secretary of the
Florida Department of Children and Families ("DCF").

#44), and the GEO Motion (Doc. #46).[2]   This matter is ripe for review.

## I.

### A.   Plaintiff's Complaint

Plaintiff, who is civilly confined at the Florida Civil Commitment Center (FCCC) and is proceeding *in forma pauperis*, filed this *pro se* action on a "Civil Rights Complaint Form for FCCC Residents" (Doc. #1, Complaint) alleging violations of his First, Fourth and Fourteenth Amendment rights.   Complaint at 3.   Plaintiff

---

[2]Plaintiff attaches exhibits to his response in opposition to the Liberty Motion (Doc. #35-1).   The exhibits appear to be emails between Plaintiff's mother and FCCC officials during October and November 2005.   Plaintiff also attaches his Affidavit to his response in opposition to the USPS motion (Doc. #44-1). Because Defendants Liberty and the USPS filed motions to dismiss and not motions for summary judgment, the Court will not consider either Plaintiff's exhibits or his Affidavit.   When deciding a motion to dismiss, "the court limits its consideration to the pleadings and exhibits attached thereto" and incorporated into the complaint by reference. *Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 n. 7 (11th Cir. 2006) (internal marks omitted).

Moreover, the emails which Plaintiff attaches are irrelevant to the instant action because they concern a time period that is clearly barred by the four-year applicable statute of limitations. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999); *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). Further, Plaintiff's Affidavit does not comport with the requirements for an affidavit to be valid.   An affidavit is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public." *Life Ins. Co. of N. America v. Foster*, n.5 (D. Ala. 2010)(citations omitted).   The affidavit must be based on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify about the matter therein.   Fed. R. Civ. P. 56(e) (1) and Fed. R. Evid. 902(8).

brings this action against the following defendants: the Secretary of Florida Department of Children and Families ("DCF"),[3] Liberty Behavioral Healthcare Corporations ("Liberty"); the GEO Group, Inc. ("GEO"); Jorge Santana, Business Manager for Liberty; Paul Pye, Business Manager for GEO; Ms. A. Simmons, Mailroom Supervisor for GEO; and the "Arcadia Postmistress." *Id.* at 2-3. According to the Complaint, "DCF has failed to lawfully promulgate administrative rules pertaining to facility mail policies at [the] FCCC." *Id.* As a result, Plaintiff avers that "FCCC contractors and their employees took it upon themselves to unlawfully hinder, seize, and/or destroy [his] incoming and outgoing U.S. Mail." *Id.*

The following factual allegations, which are accepted as true at this stage of the proceedings, are set forth in the Complaint. Defendants Santana and Pye developed the mail policies at the FCCC. *Id.* at 3, ¶2. Ms. Simmons did not follow FCCC policy and instead "used her own personal predilections" when handling mail. *Id.*, ¶3. Ms. Simmons did not like Plaintiff. *Id.* Ms Simmons would often return incoming mail addressed to Plaintiff. *Id.*, ¶4. Ms. Simmons

---

[3]As of the date on this Order service has not yet been effectuated upon DCF. Nonetheless, because *pro se* Plaintiff is proceeding *in forma pauperis* (Doc. #8), and 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) permits the Court "at any time" to dismiss a case if the Court determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages against a defendant who is immune from such relief, the Court also will review the allegations in the Complaint to determine whether the Court will direct service upon DCF.

returned one piece of Plaintiff's mail to "no return name, no return address." *Id.* "Often policies were not posted and/or changed regularly without notice." *Id.*, ¶4. "Without notice Liberty/GEO began using exclusive lists of 'approved magazines and newspapers' that would be allowed." *Id.*, ¶7. Ms. Simmons opened Plaintiff's mail and removed inserts and clippings sent to Plaintiff. *Id.*, ¶8. Ms. Simmons "sometimes" read Plaintiff's legal mail, which had been "opened and resealed." *Id.* Mail from Plaintiff's mother was held for days before being delivered to Plaintiff. *Id.* Ms. Simmons would not sign the delivery confirmation for Plaintiff's mail so Plaintiff could prove on what date Plaintiff's mail was delivered to the FCCC. *Id.*

Plaintiff also avers that Ms. Simmons does not mail outgoing mail on the day it is delivered to her for mailing. *Id.*, ¶10. Ms. Simmons often would return mail back to a resident for no reason, further delaying its delivery. *Id.* Plaintiff was required to identify his outgoing mail as being sent from the "Florida Civil Commitment Center." *Id.* The FCCC does not provide an outgoing log for legal mail and Ms. Simmons will not sign a "proof of mailing" to confirm the date a resident provides her legal mail. *Id.*, ¶11.

Ms. Simmons and Mr. Pye implemented policies concerning how residents can obtain their account statements or notary services, which Plaintiff claims is "hindering residents' (including myself) access to the courts." *Id.*, ¶12. Plaintiff's mail was impeded or

destroyed "as a result of grievances." *Id.*, ¶13. When "postal authorities" called the Arcadia Postmistress to inquire as to the mail issues with the FCCC, the Arcadia Postmistress told authorities "[t]hat's a prison out there; they can do whatever they want." *Id.*, ¶14. Plaintiff contends that the Arcadia Postmistress "has allowed her friendship with Ms. Simmons to violate her duties." *Id.* As relief, Plaintiff seeks various forms of injunctive relief, as well as monetary damages. *Id.* at 5.

**B.  Liberty's Motion** (Doc. #27)

Defendant Liberty seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim against Liberty. *See generally* Liberty Motion. Liberty points out that it is only mentioned in paragraph 7 of the Complaint, wherein Plaintiff states that "without notice Liberty/GEO began using exclusive lists of 'approved magazines and newspapers' that would be allowed," causing some of Plaintiff's magazines to be returned. *Id.* at 3. Liberty submits that this sole allegation does not rise to the level of a constitutional violation. *Id.* Plaintiff contends that Liberty's Motion is "premature." Plaintiff's Response to Liberty Motion at 1.

**C.  USPS' Motion** (Doc. #39)

Defendant the United States Postal Service (USPS) seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim against the USPS. *See generally* USPS

Motion.  The USPS argues that the Complaint concerns the handling of Plaintiff's mail at the FCCC, and the USPS has no control of the mail once it is delivered to the facility.  *Id*. at 1.  The USPS submits that the sole paragraph of the Complaint directed to the Arcadia Postmistress - - that she allegedly referred to the FCCC as a "prison" and stated that FCCC officials "could do whatever they wanted" - - does not state a constitutional violation.  Further, to the extent Plaintiff is attempting to allege a claim under the Federal Tort Claims Act, "claims arising out of the loss, miscarriage, or negligent transmission of letters or postal matter" are exempt from the Act.  28 U.S.C. § 2680(b).  Plaintiff argues that the Arcadia Postmistress is "misusing her position to cover for the FCCC defendants and DCF."  Plaintiff's Response to USPS Motion at 2.

**D.   GEO's Motion** (Doc. #41)

Defendant GEO seeks dismissal of the Complaint on the grounds that Plaintiff is improperly "attempting to use 28 U.S.C. § 2201 of the Federal Declaratory Judgment Act (DJA) as his vehicle for addressing his Due Process and Equal Protection claims."  Motion at 2.  In response, Plaintiff refutes that he seeks relief under the DJA and instead asserts that he brought this action pursuant to 42 U.S.C. § 1983, and seeks declaratory relief only as an additional form of relief.  *See generally* Response.

## II.

### A.    Applicable Standards

A complaint need not provide detailed factual allegations, but it must contain "sufficient factual matter" to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. ____, 129 S. Ct. 1937, 1949 (2009).  The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Thus, "the-defendant-unlawfully harmed me accusation" is insufficient.   *Ashcroft*, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.*  "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delat Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  The heightened pleading standard, however, is no longer applicable to civil cases.  *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).  Additionally, *pro se* pleadings are to be liberally construed and are not held to the same stringent standard as pleadings drafted by an attorney.  *Tannenbaum v. U.S.* 148, F.3d 1262, 1263 (11th Cir. 1998).

Alternatively, because the Court previously determined that the *pro se* Plaintiff may proceed in this action *in forma pauperis* (Doc. #9), 28 U.S.C. § 1915(e)(2)(B)(i)-(iii), permits the Court

"at any time" to dismiss a case if the Court determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages against a defendant who is immune from such relief.   The standards that govern a Rule 12(b)(6) dismissal apply when reviewing a claim under 28 U.S.C. §§ 1915A or 1915(e)(2)(B)(ii).  *Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008).   Additionally, a § 1915 dismissal is warranted when the claim lacks arguable merit either in law or fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309 (11th Cir. 2002); *Bilal v. Driver*, 251 F.3d 1346 (11th Cir. 2001).   Moreover, § 1915 requires dismissal when the legal theories advanced are "indisputably meritless," *Nietzke*, 490 U.S. at 327; when the claims rely on factual allegations which are "clearly baseless" *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); or, when it appears that the plaintiff has little or no chance of success.  *Bilal*, 251 F.3d at 1349.

### B.   Applicable Law

This Court is cognizant that Plaintiff is civilly committed, the FCCC is not a prison, and Plaintiff is not a prisoner. *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002).   The Supreme Court has recognized that an individual who has been involuntarily civilly confined has liberty interests under the Due Process Clause of the Fourteenth Amendment that "require the State

-8-

to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint." *Youngberg v. Romeo*, 457 U.S. 317, 319 (1982).  Thus, the Supreme Court has opined that, at least in regards to certain aspects of their confinement, civil detainees are afforded a higher standard of care than those who are criminally committed.[4]  *See Id.* at 321-322; *Dolihite v. Maughon*, 74 F.3d 1027, 1041 (11th Cir. 1996)(holding that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").  *See also Lavender v. Kearney*, 206 F. App'x 860, 863 (11th Cir. 2006). Nonetheless, case law relevant to defining the contours of constitutional rights afforded to prisoners is relevant in evaluating a claim brought by a person who is involuntarily civilly committed.  *Id*.

Interference with an inmate's "legal mail" implicates an inmate's right of access to courts and free speech as guaranteed by the First and Fourteenth Amendments of the United States Constitution.  *Procunier v. Martinez,* 416 U.S. 396, 412-13 (1974), *overruled on other grounds by Thornburgh v. Abbott,* 490 U.S. 401,

---

[4]In *Youngberg*, the issue was whether a severely retarded young man had received proper treatment in a state facility.  *Id*. at 309. Although FCCC residents are similarly civilly confined, the reasons for and purposes of their commitment is worthy of distinction.

413-14 (1989).[5]   It has long been noted that "censorship of prisoner mail, whether incoming or outgoing, impinges on the interest in communication of both the inmate and the nonprisoner correspondent." *Saxbe v. Washington Post Co.,* 417 U.S. 843, 865 (1974).  "Censorship" means either the direct practice of refusing to deliver mail from prisoners to outside correspondents or vice versa, as well as disciplining an inmate for writing "objectionable letters." *Taylor v. Sterrett,* 532 F.2d 462, 469 (5th Cir. 1976)[6] (explaining *Martinez,* 416 U.S. 396).  Additionally, the Supreme Court recognizes that the prisoners' correspondents, as well as the prisoners, have an interest in uncensored communication under the First and Fourteenth Amendments.  *Martinez* 416 U.S. at 417.

With respect to outgoing non-attorney mail, jail officials may review it and censor it if: (1) the practice furthers an important or substantial governmental interest unrelated to the suppression of expression; and (2) the limitation of First Amendment rights is no greater than necessary or essential to protect the governmental interest.  *Id*. at 412-13.  However, there must be a "delicate

---

[5]*Thornburgh,* which involved only incoming mail, limited *Martinez* to cases involving outgoing prison mail and overruled *Martinez* to the extent it suggests a distinction between incoming mail from prisoners and incoming mail from non-prisoners. *Thornburgh,* 490 U.S. at 412-14.

[6]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

balance" between prisoner's First Amendment rights and prison administrators' discretion to govern the order and security of an institution. *Id.* at 404-05; *Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989).

Prison officials are afforded more leeway in regulating incoming mail because of the greater security risks inherent in materials coming into an institution. *Thornburgh,* 490 U.S. at 416-17 (noting the broad discretion given to administrators in determining whether a publication should be permitted into an institution). Consequently, *Turner* is applicable to regulations and policies regarding all incoming mail, and regulations and policies involving incoming mail are "valid if [they] are reasonably related to legitimate penological interests." *Turner v. Safely,* 482 U.S. 78, 89 (1987).

While inmates have a legal right to receive mail from their counsel uncensored by prison officials, opening legal mail in the presence of the inmate does not constitute "censorship" when the mail is not read. *Wolff v. McDonnell,* 418 U.S. 539, 577 (1974); *Lemon v. Dugger,* 931 F.2d 1465, 1467 (11th Cir. 1991). Thus, jail inmates have a right under the First Amendment to have their attorney mail, both incoming and outgoing, opened only in their presence. Al-*Amin v. Smith,* 511 F.3d 1317, 1333-34 (11th Cir. 2008)(holding that opening attorney mail outside inmate's presence

violates inmate's free speech rights even if there is no resulting injury).

Additionally, prison officials have a responsibility to forward mail to inmates promptly. *Bryan v. Werner,* 516 F.2d 233, 238 (3d Cir. 1975). Allegations that mail delivery was delayed for an inordinate amount of time are sufficient to state a claim for a violation of the First Amendment. *Antonelli v. Sheahan,* 81 F.3d 1422, 1432 (7th Cir. 1996). However, a temporary delay or isolated incident of delay does not violate a prisoner's First Amendment rights. *Crofton v. Roe,* 170 F.3d 957, 961 (9th Cir. 1999)(policy of diverting publications through property room reasonably related to prison's interest in inspecting mail for contraband).

In the civil commitment context, the district court in California held that "any restrictions on [a civil detainee's] First Amendment rights to send and receive mail must be non-punitive." *Robinson v. Joya,* Case No. 1:08-cv-1339-JLS, 2010 WL 890437, at *7 (E.D. Ca. 2010)(citing Hydrick, 500 F.3d at 989; *Jones,* 393 F.3d at 932). To show that restrictions are punitive, a plaintiff must show "that the challenged restrictions are expressly intended to punish, the restrictions serve a non-punitive purpose but are nonetheless excessive, or that the legitimate purpose could be accomplished with less restrictive or harsh methods." *Id.* (citing *Jones,* 393 F.3d at 932; *Bell,* 441 U.S. at 539).

**III.**

Liberally construing the Complaint, it appears that Plaintiff is attempting to assert: (1) a First Amendment access to court claim stemming from the unspecified FCCC policies governing how residents can obtain their resident account statements and/or availability of notary services; and, (2) First and Fourteenth Amendment violations in connection with the opening of Plaintiff's mail, the delay in sending and delivering Plaintiff's mail, and the FCCC's adoption of regulations governing publications.

**1.   First Amendment/Access to Court**

The Court finds that Plaintiff's access to the court claim as stated fails as a matter of law. *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith,* 430 U.S. 817 (1977); *Chandler v. Baird,* 926 F.2d 1057 (11th Cir. 1991). The Complaint contains no allegations that the failure to provide notary services, the delay in providing Plaintiff with a copy of his FCCC resident account, or any interference with Plaintiff's legal mail caused Plaintiff harm or prejudiced Plaintiff in a criminal appeal, post-conviction matter, or in a § 1983 action. *Lewis,* 518 U.S. at 349-351. Moreover, a plaintiff cannot establish the "injury" element, which is required to state an access to the court claim, unless the case that plaintiff was unable to pursue had arguable merit. *Id.* at 353; *Wilson,* 163 F.3d 1291. Consequently, the Court will dismiss

Plaintiff's First Amendment access to court claim against all Defendants without prejudice.

### 2.    First Amendment/Interference With Mail

### A.    The GEO Defendants

The Court finds Defendant GEO's Motion premised on the DJA to be wholly without merit.  Consequently, the Court denies Defendant GEO's Motion to Dismiss for the same reasons previously stated in the Court's July 6, 2011 Order (Doc. #34) entered in case number 2:09-cv-799-36DNF.   Nonetheless, in the interest of judicial economy and in order to expedite the disposition of this matter, the Court will review the Complaint pursuant to § 1915 as to each of the GEO Defendants.

### Defendant Simmons

Accepting all allegations as true, the Court finds that the Complaint states a First Amendment claim concerning the alleged interference with Plaintiff's mail against Defendant Simmons.  The Complaint contains allegations that Defendant Simmons opened Plaintiff's incoming mail from family members and destroyed newspaper clippings contained in the envelopes from family members, opened Plaintiff's legal mail outside his presence, and delayed the delivery of both Plaintiff's outgoing and incoming mail.  Thus, the Court will direct Defendant Simmons to file an answer to the Complaint.

**Defendants Pye and Santana**

Plaintiff states that Defendants Pye and Santana developed the mail policies in effect at the FCCC.  Complaint at 3.  In purely conclusory terms, Plaintiff avers that these policies were "unlawful."  *Id*.  Plaintiff, however, does not provide the wording of the policies, nor does Plaintiff claim that the policies developed by Pye and Santana were the "moving force" behind the alleged misconduct of Ms. Simmons.  *See Board of County Commissioners v. Brown*, 117 S. Ct. 1382, 1388 (1997); *McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004).  In fact, the Complaint expressly states that Defendant Simmons "developed her own policies to follow," and chose not to follow the FCCC mail policies.  Complaint at 3.  Consequently, the Complaint fails to state a claim as to Defendants Pye and Santana under 28 U.S.C. § 1915.

**Defendant GEO**

The Complaint generally references acts by "GEO employees," but does not specify which employees committed such acts.  To the extent that Plaintiff attempts to hold GEO vicariously liable for the acts of its employees, the law is well settled that there is no *respondent superior* or vicarious liability for a § 1983 claim. *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001).

Alternatively, it appears that Plaintiff predicates liability upon GEO for failing to provide an "outgoing log for legal mail" and for developing an approved list of magazines, which resulted in

Plaintiff not being reimbursed for having to mail magazines to his mother's home.  Complaint at 4, ¶¶7, 11.  The Court is unaware of any constitutional mandate that requires an institution to provide detainees with a log identifying each piece of legal mail.  A regulation affecting the First Amendment rights of prisoners to receive and possess "publications" is valid if the regulation is "reasonably related to legitimate penological interests."  *Owen v. Willie,* 117 F.3d 1235, 1237 (11th Cir. 1997)(quoting *Thornburgh,* 490 U.S. at 413).  Indeed, regulations impacting First Amendment rights are subjected to a type of rational basis test.[7]

The fact that the FCCC promulgated a regulation to restrict the entry of publications into the FCCC does not, in and of itself, state a constitutional claim.  *See Thornburg*, 490 U.S. 401 (there is clearly no *per se* bar to censorship of incoming prisoner's mail).  Plaintiff fails to identify the wording of the FCCC policy and instead claims only that it is "constitutionally unacceptable."

---

[7]The analysis of the constitutionality of regulations involving publications considers the following *Turner* factors: 1) whether the regulation is intended to further a "legitimate and neutral" government objective; 2) whether the regulation is in fact rationally related to that objective; 3) whether the regulation requires officials to make "individualized" determinations with regard to prohibiting each "issue" or whether it simply makes "blanket" prohibitions of certain publications; 4) whether, "an alternative means of exercising the right" is available; 5) "the impact that accommodation of the asserted constitutional right will have on others" in the institution; and, 6) whether the regulation is an "exaggerated response" to the administration's concerns. *Thornburgh*, 490 U.S. at 413-419.

Plaintiff does not identify the FCCC regulation governing the magazine policy adopted by GEO.  Nor does Plaintiff identify which of his publications were rejected as a result of the policy. Consequently, Plaintiff's generalized legal conclusions are not sufficient to prevent dismissal.  *Davila v. Delta Airlines, Inc.*, 326 F.3d at 1185.  Consequently, the Court will dismiss the Complaint without prejudice as to Defendant GEO.

**B.   Defendant Liberty**

Similar to Defendant GEO, the only allegation as to Defendant Liberty is that Liberty was a contractor for DCF and at some point in time developed an "approved magazines and newspapers" list. Complaint at 4.  Because the Complaint is completely devoid of any factual allegations in support of this claim, the Court will dismiss the Complaint without prejudice as to Defendant Liberty for the same reasons previously stated as to Defendant GEO.

**C.   Arcadia Postmistress**

To the extent discernible,[8] it appears that Plaintiff is attempting to allege that the Arcadia Postmistress conspired with Defendant Simmons to deprive Plaintiff of his mail.  Obstruction of the U.S. Mail is governed by 18 U.S.C. § 1701, and obstruction of mail correspondence is governed by 18 U.S.C. § 1702.  The Court finds that Plaintiff fails to state a claim for conspiracy to

---

[8]The Court is unable to determine the exact nature of the claim brought against the Arcadia Postmistress.

violate 18 U.S.C. §§ 1702 and 1708 because there is no private right of action under these penal statutes governing criminal offenses for obstruction and theft of mail. Sections 1702 and 1708 are penal statutes governing criminal offenses, and no private right of action exists under either of these criminal statutes. *Schowengerdt v. General Dynamics Corp.,* 823 F.2d 1328 (9th Cir. 1987); *Contemporary Mission, Inc. v. U.S. Postal Service,* 648 F.2d 97 (2d Cir. 1981).

In the alternative, 42 U.S.C. § 1985(3) provides a claim for damages for any party injured by "two or more persons in any State" who conspires to deprive the party "of the equal protection of the laws." However, the United States has not waived its sovereign immunity in claims brought under the Civil Rights Act. *Beale v. Blunt*, 461 F.2d 1133, 1137 (5th Cir. 1972).[9]

Similarly, the United States has not waived sovereign immunity and cannot be sued for any "tort claims arising out of activities of the Postal Service." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484-85 (2006). Thus, Plaintiff cannot allege a claim for conspiracy to violate a federal criminal statute and cannot maintain a claim under the FTCA, and his Complaint must be dismissed as to the Arcadia Postmistress. Fed. R. Civ. P. 12(b)(6); *Iqbal,* 129 S.Ct. at 1949-50; and, *Twombly,* 550 U.S. at 555-57, 570.

---

[9]*See* footnote 6, *supra.*

D.    **Secretary, DCF**

There are no allegations that the Secretary was in any way directly or causally connected to the constitutional violations alleged in the Complaint. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.), *cert. denied* 500 U.S. 933 (1990). Additionally, there is no vicarious liability, including *respondeat superior*, in § 1983 actions. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-692 (1978); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *Quinn v. Monroe County*, 330 F.3d 1320, 1325 (11th Cir. 2003); *Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). Further, the Eleventh Amendment bars monetary damages against the Secretary of DCF in his official capacity, as such action is construed as being brought against the State. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, pursuant to § 1915, the Court dismisses the Secretary of DCF from the Complaint.

ACCORDINGLY it is hereby

**ORDERED**:

1.  Defendant Liberty's Motion to Dismiss Plaintiff's Complaint (Doc. #27) is **GRANTED**, and Plaintiff's Complaint is dismissed without prejudice[10] as to Defendant Liberty.

---

[10]"Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001) (quotation and alteration omitted).

2.    The United States Postal Service's Motion to Dismiss (Doc. #39) is **GRANTED**, and Plaintiff's Complaint is dismissed without prejudice as to Defendant the United States Postal Service and/or the Arcadia Postmistress.

3.    Defendant GEO's Motion to Dismiss (Doc. #41) is **DENIED**. Nonetheless, pursuant to 28 U.S.C. § 1915, Defendants the GEO Group Inc., George Santana, and Paul Pye are dismissed, without prejudice, from the Complaint.  Defendant Simmons only shall file an answer to Plaintiff's Complaint **within twenty-one (21) days** from the date on this Order.

4.    The Secretary of the Florida Department of Children and Families is dismissed without prejudice pursuant to 28 U.S.C. § 1915.

5.    The **Clerk of Court** shall correct the caption of the case to reflect that the case remains pending against Defendant Simmons only.

6.    The **Clerk of Court** shall mail Plaintiff, along with this Order, a copy of the Order entered in Case No. 2:09-cv-799-36DNF at docket entry 34, as it was referenced in this Order.

**DONE AND ORDERED** at Fort Myers, Florida, on this 27th day of July, 2011.

Charlene Edwards Honeywell
United States District Judge

-20-

SA: hmk

Copies: All Parties of Record